There was a recusal motion in this case, and that motion will be denied. Thank you. Does the timer work automatically, Your Honor? It does work automatically, and you may reserve time, and as I say, you need to watch your time. Thank you. Richard Freeman, Your Honor, for Helix Electric. This case involves whether the court will maintain the status quo pending a final resolution of the matter at the trial court level. And the narrow issue before you is whether or not the addresses plus financial information will be disclosed to essentially an unregulated third party pending the final resolution of this matter. I think it's important for me to explain to you exactly what we're talking about here in terms of what is being released. We're talking about addresses of employees with their compensation information, with how they allocate their payments for medical, how they allocate their payments for pension, and how much disposable income they have on a weekly basis. That is what is contained in a certified payroll. It's important for you to understand that this is a certified payroll under the California rules have a detailed presentation that is required by the employer about each employee. Each employee decides how much is he going to pay for dental out of his paycheck, how much is he going to pay for retirement,  And what we're talking about here is releasing this information to essentially a totally unregulated third party with that address so that that person can go to the address of the individual and discuss it with him or presumably anyone else in the household. The mother-in-law that's living there, the aunt, a friend, absolutely no restriction whatsoever. I would call it the six no's here. There is no consent by the employee of this confidential information. There's no notice to the employee and no notice to the employer of the release of this confidential information. And, in fact, that's what's happened here. There's no duty to maintain the confidentiality of the information released to the Labor Management Committee or the PCP. And there's no oversight of the entity in terms of what they do with that confidential information. And so you have This is all very nice, but isn't that argument shouldn't be addressed to the California legislature, that they really are infringing on employees' privacy in order to carry out this prevailing wage policy? No, Your Honor. It is the people of the State of California in 1972 enacted the privacy, the constitutional right of privacy which overrides anything that the California legislature wants to do. Counsel, who can assert the employee's right to privacy? The employer can as well as the employee can. And that raises the standing issue. The Stanford University case as well as other cases we've cited in our briefs specifically say that the employer has an obligation to preserve the confidential information of the employee and their addresses. In the Stanford case, as I understand it, what was requested was a complete file on an individual that would have revealed all sorts of things about that individual. And so what you're saying to me is the fact that the employee has designated how his pay is to be allocated is of such a privacy nature that it's important that the employer assert that right on his behalf? Yes. And the Westinghouse case that we've cited also specifically says that, Your Honor. And it must be, I think it's important for the Court to understand, we are talking about releasing the home addresses of employees, which is considered private under the California Constitution as well as under the Federal cases that we've cited, as well as compensation information. Both of those things together and separately are absolute privacy rights.  The problem with your argument, at least to me, is that you're assuming that the employee would have some enormous objection to this. Maybe you really haven't, even if legally you have standing, the argument doesn't come to my mind with good grace because the employee may want to, he may be very happy to have this mechanism to make sure he's being paid the prevailing wage. Because he has no other realistic way of finding out. Well, let me address that, Your Honor. Number one is some employees may want to, some employees may not. The evidence in this case is that the PWCP comes on to the parking lot of the job site in question here, interviews the employees, they can distribute the contact information, they can give them their cards, and under, I want to point out that under California Administrative Code Title 8, 16,400 and 16,403, excuse me, 403, this is something else, but the regulations under the California Administrative Code absolutely says that these employee addresses and the certified payrolls are confidential information. Okay. Secondly, Labor Code Section 1773.2 requires the public agency, and remember, these are public job sites, not private ones, to post the prevailing wage rate at the job site. These employees are not ignorant of what they're supposed to be paid. The awarding body posts it at the job site where they're working. So they have the information. There are Federal cases that specifically say that the, and we've cited them in our brief, that distribution of contact information at the job site is sufficient. The district court level, I mean, you say this is all a subterfuge for unionization, but the problem was you didn't present a single piece of evidence other than, except on some affidavit I think in this Court, indicating that, in fact, the employees, you know, were being, was being used for this purpose and not for the purpose, legitimate purpose. The only thing you have is some hearsay. Your Honor, as a matter of law, the Planned Parenthood case says that we do not have to demonstrate abuse here. All we have to demonstrate is that the right of privacy is being violated. But the problem here in terms of standing, as Judge Fletcher began to inquire, and as Judge Trager indicated as well, is that while there are circumstances in which employers can have standing to represent the interests of their employees, there are also circumstances where they can't, and we have case law to that effect, where there is some realistic possibility of a, that their interests are not aligned. And essentially, isn't that what the assumption of the statute is, that their interests may not be aligned? Well, I don't know about, the assumption of the statute, as I understand it, is to relieve the State of an administrative burden. Because the employer may be, possibly, not obeying the law with respect to their employees. So the purpose of the statute is essentially to advance the interests of the employees vis-à-vis the employer, which is not the circumstance in any of the cases that you were talking about. Well, Your Honor, the Westinghouse case is a case where, that has dealt directly with this on employee privacy. Counsel? Yes. The Westinghouse case is quite different in that Westinghouse was being threatened with sanctions, so, for not revealing, so. Well, Your Honor, the California Labor Code imposes immediate monetary penalties and potential debarment on the employer if it does not comply with the disclosure of the certified payroll. So that is in Section 1776. So there are monetary penalties on the employer here as well. We believe the standing cases that we cited to you are very strong. Here it's important for you to understand the employee has no notice of the disclosure of the confidential information. Neither does the employer. The employer doesn't have unless he's notified by the awarding body for the first time that he's to supply certified payroll reports. Certified payroll reports may be supplied to the awarding body with the confidential information on it that's supposed to be kept confidential. And then, as what apparently happened here on one or two job sites, the PWCP asked for the confidential information and the employer wasn't notified and the employee wasn't notified. The other context in which the employer gets notified, and this is the typical one, is that the public agency has not requested the CPRs and then the labor management committee or entity purporting to be a labor management committee then requests the certified payrolls and the employer is then put on notice that they are going to release the addresses of the employees. But as a practical matter, these construction workers can't afford to go out and hire attorneys to file lawsuits to protect their privacy interests. It happens very, very quickly. The statute requires production of these payroll records within ten days of the request. And then there's no notice. And we would submit to you that the type of situation here is that the employer must protect the confidentiality of the employee's addresses. We've also pointed out in our papers that this is information under the statute that's going to competitors. It's not what you want to call it, a union or a labor management committee. Half of this entity is the competitors of the employer whose addresses are being asked for. I mean, that's a real significant issue, which under normal circumstances, the addresses of employees are not available to the competitors of the company. I guess I'm not following. What's so what? Well, that creates a standing issue for the company in wanting to raise this issue. Oh, no. You certainly have standing. You have standing. But the question is whether you have standing to raise the privacy interests of your employees. Yes. And we believe we do directly because of the Leland's, the Stanford University case and the other cases that we cited, as well as the close relationship of the employers and the employees. As you've got declarations here, the employees are complaining to the employer about being contacted at home and people asking them about their financial information. Yes. And again, we don't the courts don't require us to speculate about this. This is unrestricted information to an entity that has no oversight whatsoever by the government. There's no employee who's a party to this lawsuit. What? There's no employee who's a party to this lawsuit. No, I'm talking about the PWC. No, no. I understand that. But there is no employee who is a party to this lawsuit. There could be, but there isn't. Well, at this juncture, there's not. There isn't any evidence in the record, is there, as to employee complaints? Yes, there is, Your Honor. Where is that? It's the affidavits of Arthur Geller. Which is, and it came in pretty late in the record, but is responded to that that's not maybe the full picture. Can I ask you a tactical question? If you're saying that this statute violates the constitutional provision of the California courts, why didn't you bring that to action in the state court and raise the issue there? Well, it seems to me it's a combination of the two. There's the federal issue of joint labor management committees, as well as the privacy issues under federal law, as well as the privacy issues under state law. But you didn't raise the privacy issue under California law here, either. You never raised it. Until this court. We raised it at the, we raised the privacy issue from the get-go in five different. But not as a cause of action. Not as a cause of action, as a reparable injury, until we cited and asked for an injunction pending this appeal. But the record obviously could look somewhat different if this, were this an issue below. Presumably there would have been evidence introduced specifically to fill this evidentiary gap, and we could have dealt with it. But you never raised it as a cause of action. And, therefore, particularly given the abuse, the standard of review of a preliminary injunction, how can we fault a district judge for not having acted on it? Well, Your Honor, if you read the transcript of the oral argument, the first 8 to 10 pages of the oral argument at the injunction hearing were between myself and the judge discussing all of these privacy issues. But not the constitutional issue, because you never raised it. We didn't label it as California constitution or the federal constitution. That is correct, Your Honor. We went back to the judge when we requested an injunction pending appeal and cited all those cases to him under the California constitution and the federal constitution. But we did argue vigorously about the rights of privacy of the employee. Do you want to argue any of your other issues, because your time is wasting? I think I'll reserve.  Thank you very much. I will use 15 minutes, and Mr. Balder, on behalf of State defendants, will use 5 minutes if necessary. I think, Judge Trigger, you hit upon really two essential questions here, which is that their argument at this point boils down to an assertion that Labor Code Section 1776E violates the State constitution, constitutional right of privacy. Never raised in the pleadings, never suggested to the Court, and had that been suggested, there would have been all sorts of abstention issues raised, and we would have had a lot of other evidentiary issues to present to the Court, such as, for example, the unavailability of these employees to even talk to. So I think that that issue was never raised, and that's what this case boils down to. And plainly, the State of California saw a compelling interest, a very strong interest in enacting 1776E, because what it does is adds an additional mechanism to enforce the prevailing wages. It adds not a huge step, not a huge mechanism, but says that the State doesn't have the resources to completely monitor all these State prevailing wage jobs, and there are other ways of effectively monitoring them to ensure compliance with the State law, because the State has an interest in ensuring that the prevailing wages are paid. The State pays for these jobs. Public entities pay for them. So these public agencies have a real interest in ensuring that the workers get their money and the State isn't cheated, and the workers themselves have an interest. So this whole scheme of allowing these joint labor management committees to at least get a little more information, i.e., the workers' addresses, not their names, serves an important State interest, and that's what 1776 does. So it seems to me that, Your Honor, I mean, Judge Trigger's question really focuses upon, A, the substantial issue, the constitutional issue was never raised, never litigated, never presented to the Court below in those terms, and really shouldn't be considered by this Court. I just want to dwell on this privacy issue for a moment, and that is that, you know, I will concede that there is, under the California Constitution, some privacy issue in home addresses. No evidence was presented to the Court below of any issue regarding this other than what Mr. Freeman has alluded to. There was a hearsay statement by Mr. Geller in an affidavit saying that there had been visits by ABW officials, but no evidence that the PWCP had visited homes, caused any problems, done anything inappropriate. Is there any – what is the information in the record about what's going to be done with these addresses? The evidence is that Mr. Abram, who is the employee of the PWCP, and by the way, not a union member or union official, takes the addresses, and where he can't contact – this is his pattern – where he can't contact the employees on the job, he'll write the employees a letter to the address. Obviously, he didn't. Saying resident or something? We don't know. He just – obviously, there's no name on it. Just saying Helix employee or resident. Please contact us if you've got any problems. He also says on occasion he's gone to homes trying to locate people. But the employer presented no evidence that the PWCP or any of its agents have ever bothered, harassed, or caused any employee to be concerned about their activity. And I think you're – the Court is correct that there are certainly some employees who may well welcome these kinds of inquiries to ensure that they are paid the appropriate prevailing wage. And so the statute – They may not want to be referenced at a construction site where his employer may see them. Well, I think that's quite clear that a lot of workers would just as soon not talk to somebody from the PWCP on the site and be observed and would welcome the visit at home. And frankly, if they don't welcome it, they can tell whoever's at home, I don't want to talk to this person or throw the letter away. So it's a very unintrusive system to ensure additional information. Can I ask another question? I'm sorry. What on the information, payroll information that's revealed is really confidential? It's not like medical records. It's not like other types of information like in the Stanford case where they were going to get into all of the detail about the competence of the individual. What is there on the payroll records that might be considered confidential? Well, Mr. Freeman's correct. It sometimes varies based on the way of the employer's compensation system. State law says that you have to pay a total prevailing wage. And that can be accomplished by paying a certain amount in wages and a certain amount in benefits. So these prevailing wage forms that are a State-provided form allow you to add, put the wage and then the benefits. And the benefits can be broken down to pension, health and welfare. And that would be on an individual basis. But normally an employer does this consistent across the board. That is, most employees get the same health care, same pension. So the only thing that really shows up on these forms is the wage and the amount of benefits showing the total prevailing wage. But all of this information, including the name, address and Social Security number, is revealed to the State. Correct. So insofar as there's a parallel, for example, to the Western House case, no one's complaining about revealing it to the State, which is to the government, which is what the issue was in Western House, for example. It's being revealed anyway. The question is to whom is it being revealed? Well, it's also revealed another way, Your Honor, and that is that when the prevailing wage is published by the State, everybody knows what the total package is on that project. It's posted on the State's website. The only thing that may vary on certain job sites is how much goes to pension, how much goes to health and welfare. But that's not true of the address. But the address is going to the government. The address goes to the government and the Social Security number goes to the government. And even Mr. Freeman conceded all argument and in his briefs that they don't have a problem whatsoever in disclosing that to the various government agencies. In fact, there's no one. And the government agencies could go visit the people at their houses. Absolutely. Or write them letters or whatever. And there's more than one government agency that can get this, the Division of Apprenticeship Standards, the Labor Standards Enforcement. So my only question is whether that additional step of providing that address to an agency, the PWCP, which is a federally sanctioned agency, seriously invades any of these privacy interests. The Stanford case is so different. There it was Mr. Dong wanted the confidential record of another person who had gotten tenure or something at Stanford. The Westinghouse case was a situation where the government was seeking health and safety information. Westinghouse made this argument that had standing because it said if health and safety, particularly medical information about employees, is revealable, they're not going to give us accurate information so that we can take care of our problems. So the Court accepted a standing argument on a theory that disclosing that information would prevent Westinghouse from getting accurate medical information. Here that isn't an information that the opposite view. There's nothing in the statute that would prevent the PWCP from giving this information to the union to use in union organizing. That's correct. But there's also evidence that they have done so. That's correct. I agree. There's nothing that would prevent the PWCP or any joint labor management committee from abusing the information. But there's no evidence that's been done. And I think the State legislature wisely assumed that PWCP, the PWCP, and similar entities understand what this information is used for, and the record reflects what Mr. Abrams says. He understands it. He keeps it separate. It's never been used for organizing purposes. Do you want to address any of the legal arguments that were originally in the case, or do you want to? I want to address one other issue, and I suspect we'll never get there, and that is that counsel argues there's field preemption. That is that the State can't enact anything to assist a PWCP on a theory that Section 185 and Section 186 wholly preempt anything. And when one looks at the purposes of these joint labor management committees, they talk about economic development. Now, it's hard for me to imagine that Congress thought that these joint labor management committees couldn't go and seek some form of economic development partnered with a State or local agency, that that would somehow be preempted. And that's exactly what's going on here. The State recognizes that having an enforcement mechanism makes sense, and Congress understood that these joint labor management committees could seek to resolve problems of prevailing wage jobs. And so, therefore, these joint committees, so there's no field preemption here at all. And finally, I just, it puzzles me that counsel concedes in his opening brief at page 57 that this committee is not a labor organization. Yet he continues to argue and call it a labor organization, and therefore say the National Labor Relations Act somehow preempts this. I have nothing else to say at this point. Kennedy. I guess there's a perception that somehow you've become a tool of the union. Well, you know, we think we serve a very important separate purpose from what unions do. That was a rhetorical statement. Thank you. Thank you very much, Mr. Ritenfeld.  Thank you. May it please the Court. My name is David Balter, and I am here today representing the state police in this case, the Department of Industrial Relations and the Division of Labor Standards Enforcement and their chief executive officers. As the Court understands, labor code section 1776E was amended back in 2001 to provide for varying disclosure of certified payrolls in public works projects. And that has a two-tier, there's a two-tier disclosure. The general public can get access to these certified payrolls with the names, addresses, and social securities redacted, and the labor management committees are able to get those same documents but with the addresses present but not the names and social security numbers. It's important to understand what the state was up to in passing this amendment to 1776E, to understand that this is one of a couple of revisions to the California Labor Code, which have been enacted in the last five years, which have broadened the enforcement of California's minimum labor standards. This statute is one of them. The other most significant statute was the Labor Code Private Attorney General's Act of 2004, which invited private parties in to bring actions to enforce various civil penalties in the labor code for a wide variety of violations of that law. And both of these statutes are based upon an understanding that there are limited state resources to enforce these provisions of the labor code, and secondarily that even in the presence of more funding that these enforcement issues with these statutes are so large and widespread that more broader enforcement mechanisms were necessary. And thus the legislature has decided to, in a sense, deputize labor management committees and at least give them the opportunity, if they so wish, to become additional players in the enforcement of the prevailing wage laws, public works laws in the state of California. Now, the appellants in this case argue that these laws are preempted by the National Labor Relations Act, and they also argued in the district court that there was an equal protection problem. It appears that they have completely jettisoned their equal protection claim for this court. They do make a nominal presentation on the preemption issues. It is the position of the state that, in fact, there is a long history in the federal courts and state courts of recognizing the traditional responsibility of states for enforcing minimum labor standards that when interpreting federal laws that the courts are to not lightly deem state enactments to be preempted where they deal with the issues of traditional state matters that invoke the police powers of the state. And here, specifically, the prevailing wage laws are something that have been recognized by this court many times as being within the legitimate police powers of the state to enforce. I won't repeat the entire discussion that we've already had concerning the privacy issue, but we did raise vigorously in our brief before the court the issue that the privacy issue is a basis of relief, has not been raised before in the district court. There is no claim in the complaint for a violation of constitutional rights. But has it been raised as a basis for irreparable injury? It has been raised as a basis for irreparable injury, but I would liken that, Your Honor, more to a claim for emotional distress damages and a negligence cause of action, apart from a claim for intentional infliction of emotional distress. There is no independent cause of action that's been raised. They're saying that they would be damaged by the release of this information for various reasons. Frankly, it looks like an afterthought, and primarily the interest of the employer appears to be its interest in not seeing its employees organized by unions, which they perceive this law somehow to enhance. There was nothing in the moving papers which, you know, argued the constitutional privacy. In any event, at this point we're in a preliminary injunction stage. Yes. The employer, if the employer has proof at the point of trial that there is some infringement of the employee's privacy interest and can hook that up to some cause of action that exists at that point, that will be a different matter. Sure. And that gets us to a whole other set of issues that weren't raised in the trial court. I mean, there's not an absolute right of privacy. There's certainly no absolute right of privacy in one's address completely disconnected from the name or the social security number. And we would have presented evidence in the trial court about the difficulty of getting employees to speak in the presence of employer representatives on the job site about issues that are bread and butter to the employer and the employee. That's an issue of fact which the trial court, which the district court has not had the opportunity to get evidence on and weigh in making its determination as to whether a preliminary injunction is appropriate in this case. And for the state defendants to be subject to a preliminary injunction without having that opportunity to establish a factual record in the district court, I believe does constitute prejudice to the defendants here. And we've cited cases in our brief which we believe stand for the proposition that issues not raised in the district court should not be addressed in the court of appeal unless there is a showing of exceptional reasons why it wasn't raised below. This is sort of a conceptual question, but what was raised was the effect for reparable injury purposes on the employees and leaving aside evidentiary problems with that. Does the statute for preliminary injunction relief account for that kind of third-party injury? I don't know the answer to that. Aside from a standing problem as such, this is really an irreparable injury, which means injury. Well, I mean, they did raise two things at the oral argument in the district court. One was the asserted potential injury to the employees and also that they believe that their employees might be stolen by competitors. So we've got only one. Well, the latter presumably would be something that could legitimately be taken into account. Whether it's enough is another question, but I'm asking about the former. I don't know the answer to that question, Your Honor. One point that I would raise in response to the presentation of the appellant is he indicates that there are administrative regulations in the state of California which require the privacy of the certified payrolls be maintained. Whether those regulations are to be construed as being contrary to 1776E is another question. Generally speaking, under California law, the regulations cede way to express enactments of the legislature. And here the legislature has specifically indicated under what terms and conditions these labor management committees can be provided. Has this issue been litigated previously in this case, i.e., whether the regulations are invalid under the statute or valid or invalid? And has either side raised an issue with regard to these regulations previously? No. Well, it would also depend on how you interpret the regulation before you even get to that one. Well, sure. And, you know, one last point that I would like to raise is that there's privacy and there's privacy and there's certain, you know, there are certain things which have a much stronger privacy protection than others. Personnel records, for example, perhaps names and addresses together, certainly social security numbers are something which are of contemporary concern for all individuals. Simply a list of wage rates and addresses is something of lesser concern than if that list contained the names and or the social securities also. And it is obviously clear that the purpose of this is to provide the labor management committees with an alternative way of approaching these workers, but it is also clear that the form of the materials that they are receiving is different than a published list of names and addresses. And part of the concern of the privacy laws is to put limitations on the disbursement of information, which if in the wrong hands could be problematic. Here we have a situation where any information which has a tendency towards privacy is of a minimal nature. It does not directly implicate any particular individual. And we believe the regulations are narrowly tailored to meet that need. Thank you very much. Mr. Freeman. I'll try and be very quick and give a laundry list of things. To know the address is to know the identity. To think otherwise, I think, would be unreasonable, one. Two, the Federal courts have said the interest in turning over to third parties employee addresses for purposes of supporting or enforcing the Davis-Bacon prevailing wage is slight. The Federal courts have said the interest in keeping employee addresses confidential is substantial. And that's the balancing test. Those were SLIA cases, is that what they were? Yes, but I think it talks in terms of an exception to the Privacy Act. I think that's the context in which the FOIA cases are discussed, and the Department of Defense case I think is very important in this regard, which we've cited. Secondly, these questions, I urge the court to study our arguments carefully, because they are serious questions, and that's the standard here. This job isn't even going to be finished until late November. You've got at least a six-month statute of limitations after that. We're not talking about the PWCP not being able to get certified payrolls. We're not talking about the PWCP not being able to visit employees on the job site. We're not talking about the PWCP not being able to hand out their contact information, which the Federal courts have said that's the – that's all you really need in the cases that we've cited, is to give the employees at the job site contact information so that if they want to talk from their homes to the enforcers, they can do that. And we've got a lot of cases that have been directed to what? The State constitutional argument or some Federal law? Either one. I consider the analysis parallel, Your Honor. But there is no Federal statute. The Federal – We're arguing privacy is violated under the Federal Constitution as well. Both Federal and State constitutions. You're much better off under the California Constitution or you're not. But I will concede the California Constitution's protections for privacy are probably broader in this context than the State – excuse me. The State Constitution is broader than the Federal, and that's why we've emphasized it, Your Honor. But – and there are a whole series of cases there. But to say in a vacuum that employee addresses are not a substantial privacy interest, I think, is just not correct. And we're balancing here. But what about my observation before, which I really hadn't noticed or thought about, that you are – the privacy interest here is a very particularized one because you're not protecting the employees from your giving the information to the government. The government has employees. If there were going to be abuses, they could abuse it. Well, the regulation requires the government to be – to keep this information confidential. It's like the IRS gets our – a lot of confidential information. And that's a – They then have the right to release it. You mean that they couldn't contact the employees just as the PwC could? No. The government can contact the employees, but the government can't release all of the confidential information. I understand. But they could contact the employees. Right. And we don't have any problem with that. The government is supervised. There's oversight there. There can't be abuses. Forget about – But you have no record evidence of abuse. What? But there's no record evidence of abuse. I want to point out, Your Honor, this is such a quick pitch on the demand for certified payrolls. And I go back to Planned Parenthood. We have to immediately go in and get an injunction to keep the bell from being rung. But if you – We didn't have time to go out and identify abuses. Okay? We're talking about – Well, wait a minute. But there's – maybe in this instance, but if there was some past history that you could present involving other projects, other sites where they've abused their authority or their right and their role in this picture, I can't believe you wouldn't be able to gather that kind of information. Well, within – Presumably you've been collecting it because you have some sort of notion that they're the tool of the union here. Well, within – It must be based on something other than your just, you know, gut feeling. We've had a few days, Your Honor, to file this action. All right. But a great deal of time has elapsed in the meanwhile. A preliminary injunction was denied, but that doesn't mean you couldn't have found another one or that you couldn't have tried to get the trial heard. Well, we've – we're relying at this point, Your Honor, on the Planned Parenthood case that says you acknowledge the right of privacy without demonstrating abuse. You don't have the burden of demonstrating abuse. Well, you don't even have in a complaint yet. What? You don't have a right of privacy cause of action in any complaint that I can see. Well, we – we – Of the employees. We said the information was confidential in the complaint, Your Honor. In the motion for the TRO, we said that privacy rights were being violated. We argued most of the hearing or a great part of the hearing at the preliminary injunction stage on issues just like this in terms of the potential for abuses, the confidentiality, all of those different issues. So it's – What is our standard of review at this point? What? What is our standard of review? It's if – is there a serious – are there serious questions here? Okay. And do the balance of the hardships – But ask the irreparable harm. What is our standard of review? If the right of privacy is being violated or there is a serious question, because the balance of the hardships here, the State has not demonstrated anything. The younger case says you can't even factor in administrative burden in balancing the right of privacy. And so the balance of the hardships weighs in favor of maintaining the status quo. But on the hardship, you say serious question. You have to make a showing. You haven't made any showing. We believe we've made a substantial showing on the right of privacy, as well as the fact that there are serious questions on labor management committees and whether they can overlap with the activities of unions and whether you can essentially subcontract out if you're a labor management committee all of these enforcement issues to someone who admittedly is not under your control as an LMC and have them just do their thing. I thought the record was that they're directly under their control. I thought the record was that they're directly under their control, that the PWCP doesn't even have a bank, basically gets their money from the LMCC, reports to them every month, and so on. And the declaration – People are hired by them? The sworn testimony from the PWCP is they act independently of the Labor Management Committee and do their own thing. And I urge you to read his declaration. I did read them. Thank you very much. Thank you. Thank you, Mr. Freeman. The case of Helix Electric v. Division of Labor Standards Enforcement is submitted.
judges: B. Fletcher, Berzon, Trager